United States District Court
Southern District of Texas

**ENTERED**

May 27, 2020

David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MICHEL THOMAS, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:18-CV-0557 |
| | § | |
| GRUNDFOS, CBS *et al.*, | § | |
| *Defendants*. | § | |

**MEMORANDUM AND RECOMMENDATION**

This case is before the court on Defendants Grundfos CBS and Grundfos Americas Corporation's[1] (Grundfos's) Motion for Summary Judgment.[2]  Dkt. 85.  The Court recommends that the motion be granted and this case be dismissed with prejudice.[3]

## I.      Background

On or about December 14, 2014, Plaintiff Thomas was assigned by the temporary staffing agency that employed him, Link Staffing, to work at the Brookshire, Texas, location of Grundfos. Grundfos terminated his assignment on October 18, 2016.

Plaintiff's Second Amended Complaint (Dkt. 32) asserts claims against Grundfos under Title VII, 42 U.S.C. § 1981, the Age Discrimination in Employment Act (ADEA), and Chapter 21

---

[1] Grundfos Americas Corporation is the corporate parent of Grundfos CBS, Inc.  Thomas worked at Grundfos CBS, Inc.  A parent corporation generally is not liable for the violation of anit-discrimination laws by a subsidiary.  *Reilly v. TXU Corp.*, No. 3:05-CV-0081-M, 2009 WL 857598, at *2 (N.D. Tex. Mar. 31, 2009) ("In the Fifth Circuit, there is a strong presumption that a parent corporation is not the legal employer of its subsidiary's employees and thus, a parent company is ordinarily not liable for the discriminatory acts of its subsidiary."); *Tipton v. Northrup Grumman Corp.*, 242 F. App'x 187, 189 (5th Cir. 2007) ("The doctrine of limited liability creates a strong presumption that a parent corporation is not the employer of its subsidiary's employees.").  There is no evidence that Grundfos Americas Corporation and Grundfos CBS are a single enterprise. *Id.* (setting out four factor test).  Thus, Thomas's claims against Grundfos Americas Corporation should be dismissed for this additional reason.

[2] The District Court referred this case to this Magistrate Judge for Report and Recommendation.  Dkt. 29.

[3] For purposes of this Memorandum and Recommendation, Defendants' Motion to Strike (Dkt. 91) is denied, Plaintiff's Motion for Leave to file Surreply (Dkt. 93) is granted, and Plaintiff's objections to the Declaration of Steve Marshall included in his Response (Dkt. 90) are overruled.

of the Texas Labor Code (TCHRA)[4] based on allegations that during Thomas's time at Grundfos he was discriminated against on the basis of his age, religion, and race;[5] was subjected to a hostile work environment on the basis of his religion and sex; and was retaliated against for complaining about discrimination and the hostile environment.  Grundfos moves for summary judgment on all of Thomas's claims.[6]

## II.   Legal Standards

### A.  Summary Judgment Standards

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial.  *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001).  Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party.  *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016).  "An issue is material if its resolution could affect the outcome of the action."  *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002).  The court construes the evidence in the light

---

[4] In a filing in a related case, *Thomas v. Link Staffing, et al.*, Civil Action No. 17-3902, Thomas conceded that his TCHRA claims are untimely, (17-3902, Dkt. 25 at 1), and such claims were dismissed with prejudice (17-3902, Dkt. 35 at 5; 43).  The Court recommends the same result here, but in any event, the TCHRA claims fail for the same reasons as his other causes of action.

[5] Grundfos interprets the Second Amended Complaint as asserting a claim for sex discrimination.  Dkt. 85 at 9.  The Second Amended Complaint states: "this [lawsuit] is for the race, sex, age, and religious discrimination, as well as sexual harassment, and hostile work environment, and retaliation that was carr[ied] out on Plaintiff."  Dkt. 32 at 2.  But there is absolutely no assertion or suggestion, either in the Second Amended Complaint, or in Plaintiff's Summary Judgment Response and Affidavit, that he suffered an adverse employment action because he is male.  Therefore, the Court construes the Second Amended Complaint to assert only a sex-based harassment/hostile work environment claim, not a sex-based discrimination claim.  To the extent Thomas intended to assert a sex-based discrimination claim, Grundfos is entitled to summary judgment for the same reasons discussed with respect to his age and race discrimination claims, and because he has offered no evidence that Grundfos was motivated by Thomas's sex when making any adverse employment decision.

[6] All individual defendants have been dismissed.  Dkts. 41, 53, 84.

most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *R.L. Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013).

**B. *McDonnell Douglas* Burden-Shifting**

Thomas's claims are subject to the familiar *McDonnell Douglas* burden-shifting framework. *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 316–17 (5th Cir. 2004); *see also Lauderdale v. Texas Dep't of Criminal Justice, Institutional Div*., 512 F.3d 157, 166 (5th Cir. 2007) ("the inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII."); *Smith v. City of Jackson, Miss*., 351 F.3d 183, 196 (5th Cir. 2003) (ADEA); *Machinchick v.PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005) (TCHRA); *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 at n.2 (5th Cir. 1996) (§1981).

Pursuant to this framework, a plaintiff relying on circumstantial evidence must first present evidence of each element of a prima facie case of discrimination or retaliation. *Davis*, 383 F.3d at 317 (citing *Patel v. Midland Mem'l Hosp. & Med. Ctr*., 298 F.3d 333, 342 (5th Cir. 2002)). If a plaintiff meets this prima facie burden, a presumption of discrimination or retaliation arises, shifting the burden of production to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. *Id*.; *Hernandez v. Metro. Transit Auth. of Harris Cty.*, 673 F. App'x 414, 417 (5th Cir. 2016). If the employer states a legitimate reason for its action, the inference of discrimination or retaliation disappears, and the burden shifts back to the plaintiff to present evidence that the employer's proffered reason is merely pretextual. *Id*. "In contrast to the minimal burden that a plaintiff bears when establishing his prima facie case, a plaintiff must produce 'substantial evidence of pretext.'" *Hernandez*, 673 F. App'x at 419 (quoting *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402–03 (5th Cir. 2001)). The plaintiff always bears the

ultimate burden to prove discrimination.  *Outley v. Luke & Assoc., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016).

### III.    Analysis

#### A.  Age and Race Discrimination

To establish a prima facie case of age or race discrimination, a plaintiff must show: (1) he was in a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the employer promoted or hired someone outside of his protected class or otherwise treated him differently than other similarly situated employees outside his protected class under nearly identical circumstances.  *McMullin v. Miss. Dep't of Pub. Safety*, 782 F.3d 251, 258 (5th Cir. 2015); *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001); *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 347 (5th Cir. 2013).   An adverse employment action in the discrimination context refers to "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Felton v. Polles,* 315 F.3d 470, 486 (5th Cir. 2002), *overruled on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

Plaintiff is an African-American man over forty years old at the time of the events in question, and therefore is a member of a protected class under Title VII and the ADEA.  *See* 29 U.S.C. §§ 631(a), 633a(a); *Leal v. McHugh*, 731 F.3d 405, 410–11 (5th Cir. 2013).   However, Plaintiff's age and race discrimination claims fail because he has not demonstrated that he suffered an adverse employment action, a required element of a prima facie case of discrimination.[7]

---

[7] The Second Amended Complaint does not assert that Grundfos terminated Thomas's assignment in October 2016 due to his race, sex, or age.  *See* Dkt. 32; *see also* Dkt. 90 (Affidavit) at 46-47.  In fact, Thomas confirmed in his Surreply that "[a]t no time did I allege that I was discriminated based on race, sex, and age due to the defendants ending my assignment."  Dkt. 94 at 5.  Based on the lack of any allegation that his termination resulted from

### A.1. Thomas has failed to meet his prima facie burden to show an adverse employment action based on denial of training.

Thomas claims he was denied training due to his age and race. In his Summary Judgment Affidavit Thomas states he was discriminated on the basis of his age because he was passed over for training as a Mechanical Assembler in favor of Jorge Sosa, Anthony Winston, Matthew Thompson, Chris Voss and Jonathan Lomack, all of whom are under the age of forty and had worked at Grundfos for a shorter period than Thomas.  Dkt. 90 at 46.   Thomas also states in his Summary Judgment Affidavit that because of his race, Grundfos trained Matthew Thompson and Chris Voss instead of him, but he does not identify Thompson's or Voss's race.  Dkt. 90 at 47.

Adverse employment actions under ADEA "include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating."  *Ogden v. Brennan*, 657 F. App'x 232, 235 (5th Cir. 2016).  Thomas alleges he suffered an adverse employment action when employees under the age of forty moved ahead of him in training.  This conclusory allegation fails to satisfy Thomas's summary judgment burden because the denial of training does not constitute an "ultimate" employment decision or actionable adverse employment action.  *See Pollak v. Lew*, Civil Action No. H-11-2550, 2013 WL 1194848, *6 (S.D. Tex. Mar. 22, 2013) (Denial of training is not an actionable adverse employment action), *aff'd* 542 F. App'x 304 (5th Cir. 2013); *Brooks v. Firestone Polymers, LLC*, 70 F. Supp. 3d 816, 836 (E.D. Tex. 2014) ("Notably, the Fifth Circuit has consistently declined to find that a denial of training can constitute an actionable employment action.").  Moreover, there is no evidence that lack of training led to any further consequences for Thomas because Grundfos has presented evidence

---

discrimination and on Thomas's own denial that he claims his termination resulted from discrimination, the Court will not include termination as an adverse employment action in deciding the summary judgment motion on Thomas's discrimination claims.

establishing that there was no sequential training program in place at the Brookshire location where Thomas worked.  Marshall Affidavit, Dkt. 85-5 at ¶5.

### A.2.    Thomas has failed to meet his prima facie burden to show an adverse employment action based on failure to hire.

Thomas further contends that he was passed over for a full-time position in favor of Todd Kirchoff, Bernie Flores, Alex Silva, Rick Stephens, and John Kroll, all younger individuals who had worked at Grundfos for a shorter period than Thomas.  Dkt. 90 at 46.  Thomas contends that due to his race he was passed over for full-time positions in September 2015, when Grundfos hired John Kroll, a European-American; in December 2015, when Grundfos hired Rick Stephens, a European-American, and Bernie Flore, a Mexican-American; in January 2016 when two positions came open (although he does not identify who filled the positions); and in March or April 2016, when Grundfos hired Todd Kirchoff, a European-Amercian and Alex Silva, a Mexican-American. Dkt. 90 at 46-47.

Despite the statements in his Affidavit, Thomas did not plead a claim for age discrimination based on his failure to be hired for a permanent position.  *See* Dkt. 32 at 5.  In any event, according to Grundfos Plant Director, Steve Marshall, job openings at the Brookshire Facility were posted and temporary workers were required to submit an application to be considered for a position.  Dkt. 85-5 at ¶6.  Thomas admitted in his deposition that he never applied for an open position or promotion at Grundfos.  Thomas Dep., Dkt. 85-3 at 46, 58.   In short, Thomas's claim fails due to the absence of evidence he applied for and was denied an available position.[8]  *See Irons v. Aircraft Serv. Int'l, Inc.*, 392 F. App'x 305, 312 (5th Cir. 2010)

---

[8] In addition, to the extent Thomas alleges Grundfos failed to hire him after April 26, 2016 his claim fails because Grundfos' summary judgment evidence demonstrates a hiring freeze was in place from that date through the date his assignment ended.  Thus, there were no open positions at the Brookshire facility for which he could have been hired from April 26, 2016 through his termination. Dkt. 85-5 at ¶ 7; Dkt. 85-14; Dkt. 85-15. *See Adams v. Groesbeck Indep. Sch. Dist.*, 475 F.3d 688, 691 (5th Cir. 2007) (there can be no claim for failure to hire where plaintiff does not show

(rejecting plaintiff's argument that he was denied opportunity to apply because employer picked who they wanted to fill positions).

> ### A.3. Thomas has failed to meet his prima facie burden to show an adverse employment action based on denial of overtime.

Finally, Thomas asserts that he was denied overtime while Sosa, Winston, Lomack and Lou Harris, younger individuals who had worked at Grundfos for a shorter period than Thomas, were permitted overtime.[9]  Dkt. 90 at 46.  Despite statements in his Affidavit, Thomas did not plead a claim for age discrimination based on his failure to be allowed to work overtime.  *See* Dkt. 32 at 5.  In addition, Thomas has presented no evidence demonstrating he was denied overtime work based on his age.  To the contrary, Thomas testified that he consistently worked at least 10 hours a week of overtime at Grundfos.  Dkt. 85-3 at 26.   Thomas has not met his summary judgment burden to show that he was denied overtime and thus has not satisfied his prima facie burden to show he suffered an actionable adverse employment action.

> ### A.4. Thomas's failure to produce other evidence also requires the Court to grant summary judgment in favor of Grundfos.

Aside from the failure to establish an adverse employment action, Thomas's age and race discrimination claims suffer from additional deficiencies.  Even if Thomas could meet the prima facie element of an adverse employment action based on lack of training and denial of overtime, he has not met his additional prima facie burden to show that other similarly situated employees outside his protected class were treated differently under nearly identical circumstances. *See Lee v. Kansas City S. Ry. Co*., 574 F.3d 253, 260 (5th Cir. 2009) (The Fifth Circuit "require[s] that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'").  Thomas has done nothing

---

there was an available position).

[9] Thomas does not allege he was denied overtime based on his race.

more than list names of younger, non-African-American individuals.  He has presented no evidence of the individuals' job titles, qualifications, supervisors, or any other details beyond the conclusory and unsupported allegation that they were all outside of his protected class.  Such conclusory allegations are not sufficient to survive summary judgment.  *Gonzales v. Wells Fargo Bank, Nat'l Ass'n*, 733 F. App'x 795, 797 (5th Cir. 2018) ("To establish that a younger employee is "similarly situated," a plaintiff must show "nearly identical" circumstances." (internal citations omitted)).  Thomas's Affidavit asserting nothing more than his subjective belief that he was discriminated against based on his age cannot save his claim.  *Vasquez v. Nueces Cty., Tex.*, 551 F. App'x 91, 94 (5th Cir. 2013) ("[W]e have held that the subjective belief of a plaintiff is not sufficient to establish a *prima facie* case of discrimination under Title VII, the ADEA, or the TCHRA.").

In addition, even if Thomas could meet his prima facie burden to show an adverse employment action based on the failure to hire him in a permanent position, his claim cannot survive summary judgment.  Defendant presented summary judgment evidence explaining that it did not hire Thomas as a permanent employee because Thomas did not apply for an available position.  Thomas has not shown that that Defendant's explanation is false or that he was more qualified for a permanent position than the individuals he alleges were hired instead. *See Roberson-King v. Louisiana Workforce Comm'n*, 904 F.3d 377, 381 (5th Cir. 2018) ("A plaintiff can demonstrate pretext through evidence that she was clearly better qualified (as opposed to merely better or as qualified) than the chosen employee." (citation omitted)); *Adeleke v. Dallas Area Rapid Transit*, No. 3-10-CV-2113-BD, 2011 WL 13185787, at *2 (N.D. Tex. Oct. 3, 2011) ("Without admissible evidence showing that plaintiff was 'clearly better qualified' than the applicants who were hired by DART, he cannot establish pretext under this theory.").

In sum, Grundfos's motion for summary judgment on Thomas's age and race discrimination claims should be granted.

### B. Religious Discrimination.

Title VII prohibits discrimination on the basis of religion.  As with all Title VII claims, to survive summary judgment on a claim of religious discrimination a plaintiff must show that he: (1) is a member of a protected class; (2) was qualified for his position; (3) suffered an adverse employment action; and (4) was replaced by someone who is not a member of the protected classes to which the plaintiff belongs or was treated less favorably than similarly situated employees of a different religion.[10]  *Pollak v. Lew*, No. CIV.A. H-11-2550, 2013 WL 1194848, at *5 (S.D. Tex. Mar. 22, 2013).  In this case, Thomas has not alleged a religious discrimination claim, much less presented evidence that he suffered any adverse employment action or was treated less favorably than other employees of a different religion.  Thomas does not allege that he was harassed because of his religion.  Dkt. 32.  Thomas alleges only that he was offended by the culture and homosexual comments at Grundfos because they conflict with his religious views as a Baptist. Dkt. 32 at 3 ("I am a Baptist and homosexuality is not something I embrace due to my faith . . . "); Dkt. 85-3 at 57 ("Q: So, again, your religious discrimination claim is based on the sexual harassment and because that homosexual stuff is against your religious beliefs? A. Correct.").  In fact, he admitted in his deposition that no one at Grundfos ever said anything to him about his religion:

> Q. All right. But, to be clear, nobody ever said
> anything about your religion, per se; is that --

---

[10] Often, religious discrimination cases involve allegations that an employer failed to accommodate an employee's religious beliefs.  *See Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 273 (5th Cir. 2000) ("To establish a prima facie case of religious discrimination under Title VII, a plaintiff must establish that he had a *bona fide* religious belief that conflicted with an employment requirement, that he informed the employer of his belief, and that he was discharged for failing to comply with the conflicting employment requirement.").  Thomas has not pled a failure to accommodate claim.

A. No, sir.
Q. -- correct?
A. Correct.
Q. Okay. What religion are you?
A. Southern Baptist.
Q. Southern Baptist. Okay. All right. Did you
 ever even discuss your religion at work with anybody?
A. Oh, no, sir.
Q. Okay. Did anybody ever discuss religion at
work that you heard?
A.  No, sir.

Dkt. 85-3 at 56-57.  Thomas mistakenly believes that Title VII entitles him to a workplace in which the culture, conduct and comments are in harmony with his religious beliefs.  That is not the purpose of Title VII.  *See Suarez v. Nueces Cty., Tex.*, No. CIV.A. C-08-217, 2009 WL 2868228, at *4 (S.D. Tex. Aug. 31, 2009) (summary judgment granted on plaintiff's claim of hostile work environment based on religion because "[d]iscourtesy or rudeness, 'offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in 'terms and conditions of employment.'" (citation omitted)); *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.* 731 F.3d 444, 460 (5th Cir. 2013) ("Title VII is not a general civility code for the American workplace.").  Grundfos is entitled to summary judgment on Thomas' religious discrimination claim because Thomas has not plead or demonstrated a prime facie case for discrimination or hostile work environment based on his religion.

### C.  Sexual Harassment/Hostile Work Environment

 "The creation of a hostile work environment through harassment" is a form of discrimination prohibited by Title VII.  *Boh Bros. Const. Co.,* 731 F.3d at 452 (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013)).  Furthermore, the Supreme Court has held that same-sex harassment is actionable under Title VII.  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998).

10

A hostile work environment claim based on sexual harassment requires the plaintiff to plead and prove: (1) he belongs to a protected class; (2) he was subject to unwelcome sexual harassment; (3) the harassment was based on protected characteristic [his sex]; and (4) the harassment was so severe or pervasive that it affected a 'term, condition, or  privilege' of employment." *Boh Bros. Const. Co.,* 731 F.3d at 453.  When the alleged harasser is a co-worker, a plaintiff must also show a fifth element — that his "employer knew or should have known of the harassment and failed to take prompt remedial action." *Gibson v. Verizon Servs. Org., Inc.*, 498 F. App'x 391, 394 (5th Cir. 2012); *Boh Bros. Const. Co.,* 731 F.3d at 452.  "An employer can escape liability if it takes remedial action calculated to end co-worker harassment as soon as it knows or should know of the harassment." *Cherry v. Shaw Coastal, Inc.*, 668 F.3d 182, 189 (5th Cir. 2012). When the alleged harasser is the victim's supervisor, and the victim proves the harassment resulted in a "tangible employment action," the employer is strictly liable.  *Boh Bros.Const. Co.*, 731 F.3d at 452.

### C.1.    Thomas has not met his summary judgment burden with respect to his alleged co-worker sexual harassment claims.

Thomas alleges same-sex harassment by Jorge Sosa (temporary worker), John Taylor (Senior Assembly Mechanic), and Terry Jalufka (Senior Assembly Mechanic Lead).  These are the only alleged harassers mentioned in Thomas's June 14, 2016 complaint, his February 2017 EEOC charge, and his Second Amended Complaint.  Dkt. 85-6 at 6-7; Dkt. 85-8 at 2; Dkt. 32.  To the extent his harassers are co-workers, Thomas's claim must be dismissed because the evidence shows that Grundfos took prompt remedial action to address Thomas's complaint.  Thomas admits Grundfos immediately undertook an investigation, including interviewing him on the phone and in person.  Dkt. 85-3 at 21-23. As a result of its investigation, Grundfos terminated Jalufka's employment, demoted and issued a final warning to Taylor, and terminated Sosa's temporary

assignment. Dkt. 85-5 at 3.  Grundfos also instituted training and awareness programs.  *Id.*; Dkt. 85-3 at 36-37.   Grundfos's intervening actions to stop the harassment bars liability for any conduct that occurred prior to its actions.  *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 329 (5th Cir. 2009) (prompt remedial action reasonably calculated to end the harassment protects an employer from Title VII liability.). Thomas confirmed that he was not harassed after the investigation and remedial actions.  Dkt. 85-3 at 35 ("Q:  Did anybody ever say or direct anything to you after that investigation took place?  A:  No, sir").  Therefore, Grundfos is entitled to summary judgment on Thomas's claims of co-worker sexual harassment.

### C.2.   Thomas has not met his summary judgment burden with respect to any alleged supervisor harassment claims.

A supervisor is someone "empowered by the employer to take tangible employment actions against the victim."  *Id.* at 452-53.  Thomas asserts that "Terry Jalufka my supervisor was the leader in participating in this offensive conduct."[11]  Dkt. 90 at 41.  Even assuming Thomas's allegations that Jalufka disciplined him on two occasions and otherwise managed his work assignments (*id.*) is sufficient to establish that Jalufka was his supervisor, Thomas's claim still fails.  The strict liability standard for supervisor harassment is triggered only where the victim suffered a "tangible employment action" due to the harassment.  Thomas has not alleged that the harassment he suffered culminated in a tangible employment action against him.  Thomas alleges that the termination of his assignment was the result of retaliation, he does not allege it was the result of harassment.  *See* Dkt. 32; Dkt. 90; Dkt. 94 at 5 ("at no time did I allege I was discriminated against based on race, sex, and age due to the defendants ending my assignment.").

---

[11] In his Summary Judgment Affidavit, Thomas asserts that Marshall participated in the harassing conduct. Dkt. 90 at 43.  Thomas did not raise such a claim with the EEOC, Dkt. 85-8, or plead it in this case, Dkt. 32.  But in any event, any such claim must be dismissed for the reasons set forth in this and the following sections of this Memorandum and Recommendation.

In situations where an alleged harasser is supervisor but the supervisor's harassment does not culminate in a tangible employment action, an employer can avoid liability by proving as an affirmative defense that (1) it exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided. *Boh Bros. Const. Co.*, 731 F.3d at 452. Because Thomas cannot show severe or pervasive harassment based on sex, as discussed in Section C.3. below, the Court need not address the affirmative defense.

### C.3. Thomas has failed to create a genuine issue of material fact as to whether the harassment was based on his sex and was severe or pervasive under Fifth Circuit precedent.

In addition to the reasons stated above,  Thomas's sexual harassment claim should be dismissed because Thomas has not created a genuine issue of material fact on two required elements of the claim:  whether the harassment was based on protected characteristic [his sex]; and whether the harassment was so severe or pervasive that it affected a 'term, condition, or privilege' of employment." *See Boh Bros. Const. Co.,* 731 F.3d at 453 (listing elements of a hostile work environment discrimination claim based on sexual harassment).  Both of these elements must be met in order to impose liability on an employer. "For example, same-sex harassment that is 'severe or pervasive' enough to create a hostile environment might be excluded from the coverage of [T]itle VII because it was not discriminatory on the basis of sex." *Id.* On the other hand, "same-sex harassment that is indisputably discriminatory might not be serious enough to make out . . . [a] hostile environment claim." *Id.*

A Plaintiff may prove that same-sex harassment was based on sex by showing  (1) explicit or implicit proposals of sexual activity if there is credible evidence the harasser is homosexual; (2) the harasser was motivated by general hostility to the presence of others of the

same sex in the workplace; or (3) "direct comparative evidence" about how the harasser treated men and women differently in the workplace. *Oncale*, 523 U.S. at 80-81. "Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimina[tion]* ... because of ... sex.'" *Id.* at 81. Thomas has presented no evidence to establish that the harassment he endured constituted discrimination based on his male sex. In fact, his own Affidavit points out that the work environment at Grundfos was hostile to women as well. Dkt. 90 at 45.

While Thomas's allegations paint of a picture of a crude and vulgar work culture, they do not support a claim for hostile work environment based on his sex. *See Oncale*, 523 U.S. at 80 (Title VII is not a general civility code for the American workplace, regardless of whether opposite-sex or same-sex harassment is at issue); *Jones v. Dallas Cnty.*, 47 F. Supp. 3d 469, 484 (N.D. Tex. 2014) ("Merely offensive conduct is not actionable"). Thomas states in his Affidavit:

> All during the day I would bend over to perform a task and a co-workers would make sheep sounds baha, baha, and start laughing. Telling me you may not want to bend over in front of another co-worker. I see co-workers grabbing each others buttock and laughing, they come up behind each other and start humping on their butts. Also they would come up and pinch each others nipples. When a co-worker is bend over during a task another co-worker would come over and stand in front of him at his head level and start rubbing his penis and smiling. Everyday my supervisor Terry Jalufka would tell us "Guys lets go home and get some s**t on our d**ks." We come to work each morning asking different co-workers, "You get any s**t on this d**k this weekend or last night. John (JT) Taylor coming to me at least twice a week very week telling me "They are looking for you" and when I ask who, he would say "These Nuts" and start laughing, it is this kind of offensive and abusive behavior that were allowed to take place for 19 months, when I was there, and it have been taking place for over fifteen years, as I had learned after talking to employees like Roy Blair, who had been there for nearly 20 years. Terry Jalufka would drop paper on the floor and tell Jorge Sosa to pick it up and Jorge Sosa would say no and Kjalufka [sic] would say that is what I thought. Sosa would tell me he has given Billy Baxter and Terry Jalufka a b*** j** so he can be hired on full time with Grundfos.

Dkt. 90 at 43.  The Affidavit also states that at some point Jorge Sosa told Thomas that Sosa had a dream about Thomas and Sosa being in bed together cuddling and that Sosa woke up hot and sweaty.  *Id.* at 45.  Thomas contends that this conduct made it difficult for him to work because he was afraid "one of my co-workers and/or supervisors and/or managers were going to grope me, while I was bent over and/or run some object up my rectum, and/or run up behind me and start humping my buttock, as I witnessed this being done to other employees." *Id.* at 43.  Thomas states that he witnessed physical contract between others but does not allege that anyone touched him in a sexually offensive manner.  *See* Dkt. 90.  Other than generally claiming that the environment was crude, offensive, and made his job difficult, Thomas has presented no evidence tending to demonstrate that the alleged sexual harassment altered the terms and conditions of his employment.  Indeed, Thomas testified that he was never threatened or intimidated by any of his alleged harassers.  Dkt. 85-3 at 31.

None of the offensive conduct Thomas describes rises to the standard of harassment that courts within the Fifth Circuit find so severe and pervasive as to affect a term or condition of employment. *See, e.g., Gibson v. Potter*, Civil Action No. 05-1942, 2007 WL 1428630, at *5-7 (E.D. La. May 10, 2007) (comparing cases and granting defendant's motion for summary judgment where male employee once grabbed plaintiff's buttocks, attempted to stick his tongue in her ear on several occasions, and solicited dates from plaintiff); *Hollins v. Premier Ford Lincoln Mercury, Inc*., 766 F.Supp.2d 736, 744-45 (N.D. Miss. 2011) (comparing cases and granting summary judgment on hostile work environment claim where plaintiff was cursed at several times, told that she needed to reward customer with sex for purchasing car from her, and was called a "bitch" same day her employment was terminated).

For all of the above reasons, Grundfos's motion for summary judgment on Thomas's

sexual harassment/hostile work environment claim should be granted.

### D.  Retaliation

To establish a prima facie case of retaliation, Thomas must show that:  (1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Davis*, 383 F.3d at 319 (5th Cir. 2004); *Hackett v. United Parcel Service*, 736 F. App'x 444, 452 (5th Cir. 2018).  The definition of an adverse employment action in the retaliation context is broader than the definition used in the discrimination context. *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945–46 (5th Cir. 2015) (noting that adverse employment actions for retaliation claims are not limited to the workplace, and the standard is less demanding than an ultimate employment decision).  An adverse employment action in the retaliation context is one that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 945 (alteration in original) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).  Whether an action meets this standard is judged by the standard of a "reasonable   employee," and will often depend upon the particular circumstances.  *Id.* (quoting *Burlington*, 548 U.S. at 69); *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008) (a retaliation claim may rest on an action that a reasonable employee would find materially adverse).

### D.1.    Thomas has met his prima facie burden to show he engaged in protected activity

Thomas undisputedly engaged in a protected activity.  Thomas sent a letter to a Grundfos corporate human resources executive, Duncan Copper, on June 14, 2016 in which he made numerous accusations, including the above-described allegations of sexual harassment, and allegations that Grundfos hired younger, non-African Americans instead of him.  Dkt. 85-6 at

2-7.  The June 14, 2016 letter was Thomas' first complaint of discrimination to anyone at Grundfos.  Dkt. 85-3 at 22; 32.  Thomas later shared the June 14, 2016 letter with Link Staffing in July or August 2016, Dkt. 85-3 at 15, and Link Staffing reprimanded him for raising the issue with Grundfos without first notifying Link Staffing.  Dkt. 85-3 at 17.  Thomas testified that he verbally raised the issue of race discrimination with Paddi Riopelle, Grundfos Human Resources Director, on or about October 15, 2016 during a "tool box meeting," a regular meeting held at Grundfos to address safety and work issues,  Dkt. 85-3 at 47-48, 50, and again was counseled to raise concerns with Link Staffing first and not with Grundfos management.  Dkt. 90 at 80.

### D.2.    Thomas has met his prima facie burden to show an adverse employment action as to the termination of his assignment.

As a matter of law, only adverse employment actions occurring after the date Thomas first engaged in protected activity can constitute retaliatory conduct.  *See Allen v. Envirogreen Landscape Professionals, Inc.*, 721 F. App'x 322, 326 (5th Cir. 2017) (alleged workplace retaliation that pre-dated submission of complaint cannot support retaliation claim).  The only possible adverse employment action Thomas faced after his June 14, 2016 complaint is the termination of his assignment with Grundfos.  The Court finds the termination of Thomas' temporary assignment with Grundfos on October 18, 2016 constitutes an adverse employment action.

None of the other incidents Thomas alleges (*see* Dkt. 32 at 3-4), rises to the level of an adverse employment action, even under the more lenient standard applicable to retaliation cases. Apart from the termination of his assignment, Thomas' other complaints amount only to the type of "[u]npleasant work meetings, verbal reprimands, exclusion from meetings, improper work requests, and unfair treatment" that generally are not actionable adverse employment actions.  *See, e.g., Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 485 (5 th Cir. 2008) ("As a matter of law,

these allegations [of poor treatment by managers] do not rise to the level of material adversity. Instead they fall into the category of 'petty slights, minor annoyances, and simple lack of good manners' that employees regularly encounter in the workplace, and which the Supreme Court has recognized are not actionable retaliatory conduct." (citations omitted)); *King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008) ("allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation."); *Browning v. Sw. Research Ins.*, 288 F. App'x 170, 179 (5th Cir. 2008) ("heated exchange of words" was not adverse employment action); *Earle v. Aramark Corp.*, 247 F. App'x 519, 524 (5th Cir. 2007) (being excluded from training lunch, given disciplinary write ups, and being micro-managed were not adverse employment actions).

### D.3.    Thomas has not met his prima facie or ultimate burden to show a causal link between his protected activity and his termination.

To meet the final element of a prima facie case of retaliation, Thomas must produce evidence of a causal connection between his protected conduct and the adverse employment action, termination of his Grundfos assignment.  Grundfos argues not only that Thomas cannot meet his prima facie burden to show causation, but that Thomas also cannot show Grundfos' reason for terminating his assignment is pretext.  The Court agrees.

Grundfos investigated the allegations in Thomas's June 14, 2016 letter. Dkt. 85-3 at 19-20; 85-5 at ¶8.  The investigation corroborated some of Thomas's allegations regarding inappropriate conduct by Terry Jalufka, Jorge Sosa, and John Taylor.  As a result, Grundfos terminated Jalufka, terminated Sosa's temporary assignment, and demoted Taylor. Dkt. 85-3 at 33-34; Dkt. 85-5 at ¶9.  Grundfos also issued written warnings to all employees in the Facility's Production Department, held training sessions with all permanent employees and temporary workers on its harassment policy and standards of conduct, and issued "badge buddies" which

contained brief instructions on what a worker should do if he is subjected to harassing behavior. Dkt. 85-5 at ¶10.

On October 17, 2016, Thomas approached Paddi Riopelle and Link Staffing representatives at the Brookshire Facility and alleged that Steve Marshall had been dismissed by his previous employer for sexual harassment.[12]  Dkt. 85-5 at ¶11; 85-3 at 53-54.  Thomas's accusations against Marshall on October 17, 2016 did not involve conduct that occurred at Grundfos and Thomas offered no support for them.  Thomas himself asserts that

> while Paddi (Riopell) was sitting in the meeting room I informed Link Staffing that I was also going to see if Corporate knew that Steve Marshall was terminated from BAE for sexual harassment which also caused [sic] him his marriage as a couple of people reported to me.

Dkt. 90 at 32-33 (emphasis in original). Thomas confirms that he "never alleged that a sexual harassment complaint was filed against Marshall at [Grundfos]."  *Id.* at 33.  Grundfos found the accusations concerning and to be an unfounded attempt to harm Marshall's reputation.  Dkt. 85-5 at ¶11.  As a result, Grundfos terminated Thomas's assignment at its Brookshire Facility on October 18, 2016.  Dkt. 85-5 at ¶12.

Thomas does not dispute Grundfos's factual explanation that it ended Thomas's assignment because Thomas made accusations against Marshall unrelated to any conduct that took place at Grundfos.  *See* Dkt. 90.  Thomas essentially argues that because Grundfos terminated his assignment shortly after he complained of discrimination in the October "tool box" meeting the termination must be retaliatory.  Even if the timing of the adverse employment action was sufficient to state a prima facie case, standing alone the timing does not constitute

---

[12] Thomas did not plead that he was retaliated against for engaging in protected activity by making an accusation about Marshall on October 17, 2016.  *See* Dkt. 32.  In any event, protected activity must be based on the plaintiff's "reasonable belief that the employer was engaged in unlawful employment practices." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007).  Thomas's statement about Marshall's past conduct at a different company is not a complaint that Thomas's employer was engaged in an unlawful employment practice.

sufficient evidence of causation to survive summary judgment.  *See Roberson v. Alltel Info.
Servs.*, 373 F.3d 647, 655 (5th Cir. 2004) ("the mere fact that some adverse action is taken *after*
an employee engages in some protected activity will not *always* be enough for a *prima facie*
case." (emphasis in original)); *Strong v. Univ. Healthcare Sys., LLC.*, 482 F.3d 802, 807-08 (5th
Cir. 2007) (temporal proximity insufficient to show causal link on summary judgment where
defendant has stated a legitimate, non-discriminatory reason).  The record shows that Grundfos
investigated Thomas's June 14, 2016 complaint and took remedial action.  The termination of
Thomas's assignment occurred several months later. Although Thomas engaged in protected
activity by making a verbal complaint of discrimination in the October 2016 "tool box" meeting
a few days before his termination, Grundfos has offered a legitimate, non-discriminatory reason
for its termination decision.  Thomas does not deny making the remarks about Marshall, has not
shown that Grundfos's explanation is false, and has not presented any evidence supporting an
inference that the termination of his assignment resulted from protected activity.  Thomas has
failed to meet his summary judgment burden to show Grundfos's non-retaliatory reason for the
termination is pretext, and therefore, Grundfos is entitled to summary judgment on Thomas's
retaliation claim.

## IV.    Conclusion and Recommendation

For the reasons discussed above, the court **RECOMMENDS** that Grundfos's Motion
for Summary Judgment on all of Thomas's claims (Dkt. 85) be **GRANTED**.

The Clerk of the Court shall send copies of the memorandum and recommendation to
the respective parties, who will then have fourteen days to file written objections, pursuant
to  28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided
will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on May 27, 2020, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge